**PURCELL CONSTRUCTION, INC., Appellant,**

v.

**Darla T. WELCH, Appellee.**

No. 01–98–00799–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 4, 2000.

Mary C. Thompson, David W. Medack, Edward D. Burbach, Houston, for Appellant.

Mark A. McLean, Houston, for Appellee.

Panel consists of Chief Justice SCHNEIDER, and Justices ANDELL and DUGGAN.[1]

## OPINION

LEE DUGGAN, Jr., Justice (Retired).

This is the appeal and cross-appeal of a judgment for personal injury damages in a premises liability case.

Appellant/cross-appellee, Purcell Construction, Inc. (Purcell), appeals the entry of a plaintiff's judgment. Appellee/cross-appellant, Darla T. Welch (Mrs. Welch), appeals the trial court's denial of full prejudgment interest on the judgment because of delay caused by "docket congestion." We overrule appellant Purcell's two points of error and sustain cross-appellant Mrs. Welch's cross-point. We modify that portion of the judgment awarding prejudgment interest to allow interest for the entire period from the filing of suit until the day before final judgment was rendered and we affirm the judgment as so modified.

In 1992, Friendswood Independent School District ("FISD") contracted with Purcell to perform construction projects at several schools, including Friendswood High School ("Friendswood"). The contract required Purcell to be solely responsible for the construction methods of its subcontractors, to take reasonable precautions to prevent injury to other persons, to erect and maintain reasonable safeguards for safety and protection, including danger signs and other warnings, and to promulgate safety regulations. Purcell's responsibility for the construction site and the work of its subcontractors is undisputed.

Purcell subcontracted with White Construction Company ("White") for work that included the installation of a sidewalk and driveway at Friendswood's parking lot.

On January 7, 1993, Mrs. Welch, the parent of a Friendswood student, arrived at the school at about 7 p.m. for a scheduled parents' meeting. She parked her car in the school parking lot and walked toward the school's side entrance where White had removed a section of the sidewalk adjoining the driveway. She stepped into what she thought was a puddle of water standing on the sidewalk, but was actually White's excavation filled with water. She fell, striking and severely injuring both knees. Mrs. Welch sued Purcell and White for negligently causing her injuries. The jury found Purcell and White 75% negligent, and awarded Mrs. Welch $261,154.71 in damages. Subcontractor White settled and is not a party to this appeal. Purcell's motion for judgment n.o.v. and motion for new trial were both overruled.

At trial, Mrs. Welch and three other witnesses testified that there were no warnings or barricades present at 7 p.m. on the evening of her fall to alert her to the presence of a construction excavation. A Purcell employee, Michael Caldwell, testified that White's employees left the job early that day because of bad weather; that he personally had inspected the site at

---

1. The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

5 p.m. after White's employees left; and that he saw six orange cones and two white barricades in place around the excavated portion of the sidewalk. Bryan White, White's owner, testified that it was his habit to inspect the premises visually at the end of each work day and that he personally put up barricades that day in the area where Mrs. Welch fell. He speculated that the barricades had been " stolen, vandalized, [or] misplaced" between 5 p.m. and 7 p.m.

Mrs. Welch's counsel argued to the jury and again urges on appeal that the testimony by Purcell and White witnesses that cones and barricades were placed at the accident site was fabricated. Mrs. Welch conceded in testimony that if barricades had been in place at 7 p.m., they would have provided sufficient warning for her to avoid the fall.

In the first of two interrelated issues on appeal, Purcell asserts there is no evidence or legally insufficient evidence to establish that Purcell had actual or constructive notice of the allegedly dangerous condition. In its second issue, Purcell asserts the evidence "failed to establish that it is more likely than not that the dangerous condition existed long enough to give [Purcell] a reasonable opportunity to discover the condition." Both issues presume that constructive knowledge of the dangerous condition was not established.

■ Actual or constructive knowledge of a dangerous condition by an owner or operator is required for a premises liability claim, "whether [the claim is] predicated upon negligent maintenance, a failure to warn, or the absence of safety devices." *Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex.1996).

■ When the injured party is an invitee, as Mrs. Purcell was, the elements of a premises liability case are:

1. Actual or constructive knowledge of some condition on the premises by the owner/operator;

2. That the condition posed an unreasonable risk of harm;

3. That the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and

4. That the owner/operator's failure to use such care proximately caused the plaintiff's injuries.

*Id.*

Purcell analogizes the fact situation presented here to the scenario found in a typical retail store "slip and fall" case, and relies on *Wal–Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934 (Tex.1998), for legal principles concerning an owner/operator's constructive knowledge of a dangerous situation. "Slip and fall" cases frequently present a fact situation wherein undisputed evidence shows a generally clean floor, and the injured plaintiff must show that the slippery foreign substance causing the fall was present long enough to charge the premises owner/operator with constructive notice.

■ Our case is not a "slip and fall" case, and constructive notice is not an issue. Here, subcontractor White *created* the excavation into which Mrs. Welch fell. White was therefore aware of it and the hazard it would create either with no signs and barricades or with inadequate signs and barricades. Purcell's witness, Caldwell, and Bryan White both testified that the excavation White's employees dug was unsafe if it was not barricaded.

**No signs or barricades?**

■ The only evidence that any signs and barricades, adequate or inadequate, had been erected was the self-serving testimony of subcontractor White and contractor Purcell's employee, Caldwell. If the jurors did reject this testimony, they could reasonably believe that the defendants were negligent in failing entirely to warn the public of the hole.

**Inadequate signs or barricades?**

■ White and Purcell representatives testified that White made the unsafe excavation "safe" by putting up two sawhorse barricades and some orange pylons, and that some unforeseen act of a third party created the "danger" to plaintiff by removing the warning cones and barricades.

The jury had an ample evidentiary basis to reject Purcell's contention that these steps by White, if taken, were reasonable. Assuming the truth of Purcell's stolen barricade evidence, Mrs. Welch's safety expert, Roger Craddock, testified that the barricade that Purcell's employee described seeing at 5 p.m. (two-foot stands and orange traffic cones), was inadequate to make the excavation safe, and did not meet industry standards. Exhibits stating industry standards, together with photographs admitted before the jury, showed that a "barricade" means a method to *deny access* to an excavation, as opposed to a mere *warning* of its presence. Another exhibit, which excerpted the 1980 Texas Manual on Uniform Traffic Control, showed a pictorial diagram with appropriate types of warnings and barricades to be used where pedestrians encounter construction areas. Purcell's own safety manual required that OSHA standards be followed, and an exhibit excerpting pertinent OSHA regulations defined "barricade" to mean "an obstruction to deter passage of persons."

■ With no objection, the trial court correctly defined "negligence" to the jury to mean, as to contractor Purcell and subcontractor White, "failure to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition that the contractor knows about or in the exercise of ordinary care should know about," following *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292 (Tex.1983) and *Keetch v. Kroger Co.*, 845 S.W.2d 262 (Tex. 1992). The evidence was legally and factually sufficient to show that Purcell had actual notice of the alleged dangerous condition, and negligently failed to act to reduce or eliminate it.

Purcell's two issues are overruled.

Mrs. Welch argues in her cross-point that the trial court erred in disallowing prejudgment interest for the entire time from the filing of her suit until final judgment. The trial court granted Purcell's and White's post-verdict motion to limit prejudgment interest, and entered its order allowing prejudgment interest from June 15, 1993 through January 27, 1997 only, finding that "there was delay in the trial of this matter after January 27, 1997, that was caused by the crowded nature of the Court's docket, for which the defendants were not responsible." Mrs. Welch's motion to modify the final judgment was denied.

■ We review a challenge to a trial court's award of pre-judgment interest using an abuse of discretion standard, giving limited deference to the court's application of the law to the facts. *Marsh v. Marsh*, 949 S.W.2d 734, 744 (Tex.App.—Houston [14th Dist.] 1997, no writ); *European Crossroads' Shopping Center, Ltd. v. Criswell*, 910 S.W.2d 45, 55 (Tex.App.—Dallas 1995, writ denied). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985); *Marsh*, 949 S.W.2d at 744. Further, a trial court's clear failure to apply the law correctly constitutes an abuse of discretion. *NCNB Texas Nat'l Bank v. Coker*, 765 S.W.2d 398, 400 (Tex.1989); *Marsh*, 949 S.W.2d at 744.

Prejudgment interest for personal injury claims is governed by Sections 304.104–108 of the Texas Finance Code. *See* Tex. Fin. Code §§ 304.101–08 (Vernon Supp.2000). Section 304.104 provides in relevant part that,

Except as provided by Section 304.105 or 304.108, prejudgment interest accrues on the amount of a judgment during the period beginning on the 180th day after

the date the defendant receives notice of a claim or the date the suit is filed and ending on the day preceding the date judgment is rendered. *Id.* at § 304.104. Section 304.105 provides that prejudgment interest accrues only on that portion of the judgment in excess of a settlement offer for that portion of time in which the offer remains open. *Id.* at § 304.105. Section 304.108(a) provides that "[i]n addition to the exceptions provided by Section 304.105, a court may order that prejudgment interest does not accrue during periods of delay in the trial." *Id.* at § 304.108(a). Section 304.108(b) states:

A court shall consider:

(1) periods of delay caused by a defendant; and

(2) periods of delay caused by a claimant.

*Id.* at § 304.108(b).

 Construing these provisions together, we conclude that the only statutorily recognized exceptions to prejudgment interest for personal injury are for (1) the amount of a settlement offer during the period it may be accepted, (2) delay caused by a defendant, or (3) delay caused by a claimant. Here, the record reflects that Mrs. Welch, the claimant, did not seek to delay the trial, but consistently pursued a speedy resolution of her claim. In contrast, first Purcell and then White filed motions to strike the available visiting judges during succeeding setting periods. The trial court's sole stated ground for denying interest after January 27, 1997 was delay "caused by the crowded nature of the court's docket, for which the defendants were not responsible."

 Although statutory provisions give the trial court discretion to deny a claimant prejudgment interest for delay caused by that claimant, nothing authorizes the trial court to deny prejudgment interest because of delay attributed to the court's crowded docket. To the contrary, section 304.108 allows denial of prejudgment interest only for delay caused by the parties.

*See, e.g., Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 529 (Tex.1998) (noting that Section 304's predecessor, with substantially the same language, allowed "tolling accrual of prejudgment interest as to the amount of a settlement offer during its pendency, allowing a trial court the discretion to order accrual or nonaccrual during periods of delay *caused by a defendant or a plaintiff*") (emphasis added).

 These statutory prejudgment interest provisions encourage parties to seek prompt resolution of their disputes; nothing in the statutory language, however, suggests that a court may deprive a plaintiff of the time value of its monetary judgment simply because of a crowded docket. Here, the only party-related delay was caused by Purcell and White, defendants below, who struck available visiting judges upon successive settings. We hold the trial court abused its discretion by denying Mrs. Welch prejudgment interest for delay for which she was not responsible.

Mrs. Welch's cross-point is sustained.

We modify the judgment to award prejudgment interest from the date of filing suit until the day before rendition of judgment and we affirm the judgment as so modified.