**RELIANCE STEEL & ALUMINUM COMPANY and Samuel Alvarado, Appellants,**

v.

**Michael L. SEVCIK and Cathy S. Loth, Appellees.**

No. 13–03–00407–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

March 9, 2006.

Rehearing Overruled April 13, 2006.

Chad Michael Forbes, The Wright Law Firm, Thomas C. Wright, Wright, Brown & Close, L.L.P., Houston, Russell H. McMains, Law Offices of Russell H. McMains, Corpus Christi, TX, for Appellants.

David W. Holman, Godwin, Gruber L.L.P., Ruth B. Downes, Holman & Keeling, Houston, Macklin K. Johnson, Hallettsville, TX, for Appellee.

Before Justices HINOJOSA, YAÑEZ, and GARZA.

### MEMORANDUM OPINION

Memorandum Opinion by Justice HINOJOSA.

Appellees, Michael L. Sevcik and Cathy S. Loth, sued appellants, Reliance Steel & Aluminum Company and Samuel Alvarado,[1] for damages resulting from an automobile accident. Following a jury trial, the trial court signed a judgment in favor of appellees in the amount of $3,020,000. In four issues, appellants contend (1) the evidence is legally and factually insufficient to support the jury's findings that Cathy Loth sustained damages for (a) past and future medical care, (b) future loss of earning capacity, and (c) future pain and mental anguish; and (2) the trial court erred in admitting evidence of Reliance Steel's annual sales. We modify the trial court's judgment, and as modified, affirm.

### A. FACTUAL BACKGROUND

On September 24, 1999, Cathy Loth was a passenger in a pickup truck driven by Michael Sevcik. The pickup truck was traveling westbound on Interstate Highway 10 in the right lane of traffic. At the same time, in the same vicinity, Samuel Alvarado was driving a Reliance Steel tractor trailer rig, also westbound on Interstate Highway 10, in the middle lane. While moving into the right lane of traffic, Alvarado hit the rear of the pickup truck. Sevcik and Loth sued Reliance Steel and Alvarado, claiming Alvarado's negligence caused the injuries they sustained from the accident.

### B. STANDARD OF REVIEW

In reviewing the legal sufficiency of the evidence, we view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 807 (Tex.2005). There is legally insufficient evidence or "no evidence" of a vital fact when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). More than a scintilla of evidence exists when the evidence support-

---

1. Prior to closing arguments, the parties stipulated that Alvarado was an employee of Reliance Steel at the time of the accident and that he was in the course and scope of his employ- ment; therefore, the doctrine of respondeat superior would apply and vicarious responsibility for the employee's conduct would be attributed to Reliance Steel.

ing the finding, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497 (Tex.1995)). If the evidence is so weak as to do no more than create a mere surmise or suspicion of its existence, its legal effect is that it is no evidence. *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 183 (Tex. 1995).

In reviewing the factual sufficiency of the evidence, we consider, weigh, and examine all the evidence presented at trial. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). We set aside a finding for factual insufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

## C. SUFFICIENCY OF EVIDENCE OF PAST AND FUTURE MEDICAL EXPENSES

### 1. *Past Medical Expenses*

■ In their first issue, appellants contend the evidence is legally and factually insufficient to support the jury's finding that Loth incurred past medical expenses of $40,000.00.

■ To recover for past medical expenses, a plaintiff must prove the actual amount of the expenses incurred and that those expenses were reasonable and necessary. *See Doctor v. Pardue*, 186 S.W.3d 4, 20 (Tex.App.-Houston [1st Dist.] 2006, pet. denied); *Monsanto Co. v. Johnson*, 675 S.W.2d 305, 312 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.). A plaintiff can prove reasonableness and necessity of past medical expenses by either (1) presenting expert testimony on the issues of reasonableness and necessity, or (2) presenting an affidavit prepared and filed in compliance with section 18.001 of the Tex-

as Civil Practice and Remedies Code. *See Doctor*, 186 S.W.3d at 20; *Walker v. Ricks*, 101 S.W.3d 740, 746–47 (Tex.App.-Corpus Christi 2003, no pet.).

At trial, Loth introduced an exhibit into evidence that her costs for past medical treatment totaled $33,985.23, not $40,000. Appellees argue that the jury's damage award is supported by the record because the jury heard evidence that Loth incurred other medical expenses that were not included in the exhibit. They assert the exhibit does not include (1) any of the charges by Ralph Lilly, M.D. for his consultation and treatment of Loth; (2) the cost of care provided by Larry Pollock, Ph.D. for testing and evaluating Loth; and (3) at least two visits to Loth's psychologist, Laurel Graham. However, the record is devoid of any testimony or affidavits regarding the reasonableness and necessity of these expenses. *See Doctor*, 186 S.W.3d at 20. Accordingly, we hold the evidence is legally and factually sufficient to support a finding for past medical expenses of only $33,985.23.

### 2. *Future Medical Expenses*

In their first issue, appellants also contend the evidence is legally and factually insufficient to support the jury's finding that Loth incurred future medical expenses of $250,000.

■ Texas follows the "reasonable probability" rule for future damages arising from personal injuries. *Rosenboom Mach. & Tool, Inc. v. Machala*, 995 S.W.2d 817, 828 (Tex.App.-Houston [1st Dist.] 1999, pet. denied); *City of San Antonio v. Vela*, 762 S.W.2d 314, 321 (Tex.App.-San Antonio 1988, writ denied). To recover for future medical expenses, a plaintiff must show there is a reasonable probability that such medical expenses will be incurred in the future. *Rosenboom*, 995 S.W.2d at 828; *Whole Foods Mkt. Southwest v. Ti-*

*jerina,* 979 S.W.2d 768, 781 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). The preferred practice for establishing future medical costs is through expert medical testimony, but there is no requirement that a plaintiff establish such costs in that manner. *Tijerina,* 979 S.W.2d at 781. Because no precise evidence is required, the jury may award damages for future medical care based on the nature of the injury, the medical care received prior to trial, and the condition of the injured party at the time of trial. *Id.; Vela,* 762 S.W.2d at 321.

■ It is within the jury's sound discretion to determine what amount, if any, to award in future medical expenses. *Rosenboom,* 995 S.W.2d at 828; *Tijerina,* 979 S.W.2d at 781. Issues such as life expectancy, medical advances, and the future costs of products and services are, by their very nature, uncertain, and therefore, appellate courts are particularly reluctant to disturb a jury's award of these damages. *Brownsville Pediatric Ass'n v. Reyes,* 68 S.W.3d 184, 191 (Tex.App.-Corpus Christi 2002, no pet.). However, this standard of review is "not so nebulous that a reviewing court will uphold a jury award for future medical expenses when there is no evidence." *Harvey v. Culpepper,* 801 S.W.2d 596, 599 (Tex.App.-Corpus Christi 1990, no writ).

■ Dr. Lilly, Loth's treating physician, testified that Loth sustained a closed head injury sufficient to cause traumatic brain injury as a result of the collision. He said that Loth sustained injuries to the frontal lobe and cerebellum. This injury has caused Loth to experience impaired concentration, change in personality, significant depression, traumatic headaches, and neck pain. Dr. Lilly has recommended and prescribed central nervous system stimulants to deal with concentration and attention, anti-epileptic medicine, and anti-depressants. Loth testified that she spends at least $137 per month on her medications. Dr. Lilly further testified that Loth's brain injury has caused a permanent deficit that Loth will have to deal with for the rest of her life. He recommended that she continue with neurological care and on-going therapeutic follow-up.

Dr. Pollock, a neuropsychologist, testified that Loth had a number of areas of normal and intact functioning that were not affected by her injury, but several important areas of functioning showed serious problems—the most serious being the area of verbal memory. He said that the impairments in Loth's memory and executive functioning are permanent. Dr. Pollock also testified that Loth would benefit from a rehabilitation program called Project ReEntry. He said the program costs approximately $3,000 per week, and he felt she could accomplish her maximum benefit from the program in about six months. The program is located in Houston, which would require Loth to relocate during that six-month period. Loth testified that relocating to Houston would cost her approximately $1,800 to $2,000 per month in living expenses, and in addition, she would need to obtain child care during this time.

Having viewed the evidence in the light most favorable to Loth, and crediting all evidence reasonable jurors could believe and disregarding all contrary evidence except that which jurors could not ignore, we hold the evidence is legally sufficient to support the jury's finding for future medical expenses. Furthermore, having weighed all the evidence, we cannot conclude that the award is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. Accordingly, we hold the evidence is factually sufficient to support the jury's finding

for future medical expenses. Appellants' first issue is overruled.

### D. SUFFICIENCY OF EVIDENCE OF FUTURE LOSS OF EARNING CAPACITY

In their third issue, appellants contend the evidence is legally and factually insufficient to support the jury's finding that Loth incurred future loss of earning capacity in the amount of $750,000.

■ Loss of future earning capacity is the plaintiff's diminished capacity to earn a living after the trial. *Tagle v. Galvan*, 155 S.W.3d 510, 519 (Tex.App.-San Antonio 2004, no pet.); *Strauss v. Cont'l Airlines, Inc.*, 67 S.W.3d 428, 435 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Recovery for loss of earning capacity is not based on the actual earnings lost, but on the loss of capacity to earn money. *Strauss*, 67 S.W.3d at 435.

■ To support a finding of damages for loss of future earning capacity, a plaintiff must introduce evidence sufficient to allow the jury to reasonably measure earning capacity in monetary terms. *Bonney v. San Antonio Transit Co.*, 160 Tex. 11, 325 S.W.2d 117, 121 (1959); *Tagle*, 155 S.W.3d at 519; *Strauss*, 67 S.W.3d at 435. In support, a plaintiff can introduce evidence of past earnings; the plaintiff's stamina, efficiency, and ability to work with pain; the weaknesses and degenerative changes that will naturally result from the injury; the plaintiff's work-life expectancy; and the plaintiff's age, health, and general physical condition. *Tagle*, 155 S.W.3d at 519; *Plainview Motels, Inc. v. Reynolds*, 127 S.W.3d 21, 36 (Tex.App.-Tyler 2003, no pet.). There must be some evidence that the plaintiff had the capacity to work prior to the injury, and that her capacity was impaired as a result of the injury. *Tagle*, 155 S.W.3d at 520; *Reynolds*, 127 S.W.3d at 36. In determining what evidence is sufficient to support a finding for loss of earning capacity, no general rule can be laid down, except that each case must be judged upon its peculiar facts and the damages are proved to the degree of certainty to which the case is susceptible. *Strauss*, 67 S.W.3d at 436.

■ Because the amount of money a plaintiff might earn in the future is always uncertain, the jury has considerable discretion in determining the amount. *Tagle*, 155 S.W.3d at 519. However, a jury should not be left to mere conjecture when facts appear to be available upon which the jury could base an intelligent answer. *Strauss*, 67 S.W.3d at 435 (citing *Bonney*, 325 S.W.2d at 121).

■ Appellants assume that the jury based its finding of $750,000 on Loth's testimony that she made $630 one week in the early 1990s, multiplied by 52 weeks per year for 23 years, her work-life expectancy. Appellants argue that the evidence is insufficient to support such a finding. We disagree.

Loth testified that she began sewing as a child. In the early 1990s she became a "home stitcher" for D & D Western Wear. At trial, she testified that during that time she was making up to $630 per week. Because she enjoyed creating her own original designs and felt she could make more money in her own business, Loth testified that she had begun to create her own business, Rockin' C Originals. She introduced into evidence a sketchbook of original western wear, which she designed and priced. She testified that she had contacted several "high-end" western stores in Austin and Houston that were interested in her designs, and some of her pieces were sold in these stores. One particular piece she sold for $250. She was in the process of developing her business prior to her husband's death in 1998. After his death, Loth designed a new

house and began construction, just prior to the collision, which included a sewing room for her business.

Several witnesses testified regarding her talents and capabilities prior to the accident. However, the effects of her injury have severely diminished her capacity to sew for a living. Testimony indicated that Loth suffers from memory loss, concentration problems, attention problems, and difficulty completing tasks, all of which have had a significant impact on her sewing projects. Loth testified that a project that once took only forty-five minutes to complete now takes her more than four hours to complete. Dr. Pollock testified he did not feel that Loth could have any meaningful employment. He said that while she may be able to make some garments, she is not capable of earning a living at it.

Having viewed the evidence in the light most favorable to Loth, and crediting all evidence reasonable jurors could believe and disregarding all contrary evidence except that which jurors could not ignore, we hold the evidence is legally sufficient to support the jury's finding that Loth incurred future loss of earning capacity in the amount of $750,000. Furthermore, having weighed all the evidence, we cannot conclude that the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. Accordingly, we hold the evidence is factually sufficient to support the jury's finding of future loss of earning capacity. Appellant's third issue is overruled.

### D. Sufficiency of Evidence of Future Pain and Mental Anguish

Question 2b of the jury charge asked the jury to find the amount of damages for any physical pain and mental anguish that Loth would sustain in the future. The jury found the amount of damages for physical pain and mental anguish to be $ 1,500,000. In their fourth issue, appellants contend the evidence is legally and factually insufficient to support the jury's finding.

Damages for physical and mental injuries are separate and distinct. *SunBridge Healthcare Corp. v. Penny*, 160 S.W.3d 230, 248 (Tex.App.-Texarkana 2005, no pet.); *Southwest Tex. Coors, Inc. v. Morales*, 948 S.W.2d 948, 954 (Tex.App. San Antonio 1997, no writ) (Green, J., concurring). When a damage issue is submitted in broad form, ascertaining the amount the jury awarded for each element of damages is difficult, if not impossible. *Penny*, 160 S.W.3d at 248; *see Wal–Mart Stores, Inc. v. Garcia*, 30 S.W.3d 19, 24 (Tex.App.-San Antonio 2000, no pet.); *Brookshire Bros. v. Lewis*, 997 S.W.2d 908, 921–22 (Tex.App.-Beaumont 1999, pet. denied). Therefore, an appellant who seeks to challenge a multi-element damage award on appeal must address each element and show the evidence is insufficient to support the entire award. *Penny*, 160 S.W.3d at 248; *see Garcia*, 30 S.W.3d at 24; *Lewis*, 997 S.W.2d at 922. If an appellant fails to address an element of damages, the appellant waives the sufficiency challenge. *Penny*, 160 S.W.3d at 248; *see Garcia*, 30 S.W.3d at 24; *Lewis*, 997 S.W.2d at 922.

Here, appellants failed to address the physical pain element of the jury's finding. Because appellant's brief merely focused on the mental anguish element, and failed to provide any authority or argument regarding the physical pain element, we conclude appellants waived their right to complain about the sufficiency of the jury's finding. *See* Tex.R.App. P. 33.1. Appellants' fourth issue is overruled.

### E. Evidence of Gross Sales

In their second issue, appellants contend the trial court erred in admitting evidence of Reliance Steel's annual sales.

■ We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex. 1998). Testimony concerning the wealth or poverty of a party is ordinarily inadmissible in a civil case. *Cooke v. Dykstra,* 800 S.W.2d 556, 562 (Tex.App.-Houston [14th Dist.] 1990, no writ). We will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. Tex.R.App. P. 44.1; *Malone,* 972 S.W.2d at 43. Appropriate inquiries include the length of the allegedly improper argument, whether it was repeated or abandoned and, in an evaluation of the whole case, the argument's probable effect on a material finding. *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 839–40 (Tex.1979); *Crown Plumbing, Inc. v. Petrozak,* 751 S.W.2d 936, 940 (Tex.App.-Houston [14th Dist.] 1988, writ denied). The complainant must show that the probability that the argument caused harm is greater than the probability that the verdict was grounded on proper proceedings and evidence. *Petrozak,* 751 S.W.2d at 941; *Reese,* 584 S.W.2d at 840.

■ Prior to the reading of the deposition testimony of Robert Balez, the corporate representative of Reliance Steel, appellants objected to the admissibility of his testimony as irrelevant. Appellees argued it was relevant because the testimony showed that Reliance Steel was not a "mom and pop" operation and included the number of hours its drivers were on the road per day. The trial court overruled appellants' objection. Balez's testimony regarding the size of Reliance Steel, its corporate structure, the number of employees, and its locations, was read into evidence. Appellants complain of the following testimony:

Q: How big a company is Reliance?

A: I believe last year's annual sales approximated $1.9 billion.

Absent this single statement, the record is devoid of any other reference to Reliance Steel's financial status. The annual sales of Reliance Steel was not referred to at any other stage of the trial by any witness or trial counsel. It was never repeated nor argued.

Having reviewed the evidence supporting the jury's verdict, even if the trial court erred in admitting this evidence, we cannot conclude that this one statement lead to the rendition of an improper verdict. *See Malone,* 972 S.W.2d at 43. Appellants' second issue is overruled.

### F. CONCLUSION

We have held that the evidence is legally and factually sufficient to support a finding only of $33,985.23 for Loth's past medical expenses. Accordingly, we modify the trial court's judgment to reflect that Loth is granted judgment for past medical expenses only in the amount of $33,985.23. As modified, the trial court's judgment is affirmed.