McLAUGHLIN, INC., Appellant,

v.

NORTHSTAR DRILLING
TECHNOLOGIES,
INC., Appellee.

No. 04–02–00511–CV.

Court of Appeals of Texas,
San Antonio.

April 7, 2004.

Robert J. Kruckemeyer, Houston, for appellant.

Johnathan C. Bolton, Fulbright & Jaworski, L.L.P., Houston, for appellee.

Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

**OPINION**

Opinion by CATHERINE STONE, Justice.

Appellee, Northstar Drilling Technologies, Inc., sued appellant, McLaughlin, Inc., to collect amounts due for goods and services Northstar provided to McLaughlin. McLaughlin appeals the trial court's award of damages to Northstar and the denial of McLaughlin's counterclaims. We affirm the judgment of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

McLaughlin is a directional boring and utility contractor. McLaughlin enters the ground on one side of an obstruction (such as a road, canal, or river), drills a path underneath the obstruction, and emerges back at ground level on the other side. Northstar is a directional drilling guidance company that provides guidance services to its customers using a wireless guidance system consisting of the Polaris EM wireless steering tool and TruTracker System.

In early 2000, McLaughlin contacted Northstar to request information concerning Northstar's guidance services for a subaqueous crossing job. On March 20, 2000 McLaughlin executed a written contract with Northstar entitled "Rent-

al/Lease Agreement, Northstar Polaris EM Guidance System." Northstar provided its guidance services and equipment to McLaughlin on three job sites referred to as Job No. 1, Job No. 2, and Job No. 3. The amount of goods and the quality of the services provided to McLaughlin by Northstar are currently in dispute.

Northstar charged McLaughlin $32,435.53 for the equipment and services relating to Job No. 1 and McLaughlin paid Northstar this exact amount, which Northstar accepted. Northstar charged McLaughlin $24,235.25 for Job No. 2 and $24,075.56 for Job No. 3. McLaughlin has not paid Northstar for either of these jobs. Northstar sent McLaughlin a letter demanding payment for the remaining two jobs, and in response McLaughlin made a demand on Northstar for payment of damages that McLaughlin alleged it sustained.

Northstar sued McLaughlin alleging breach of contract, and alternatively alleging suit on a sworn account, promissory estoppel, and quantum meruit. McLaughlin counterclaimed, asserting claims for breach of contract, violation of the Texas Deceptive Trade Practices Act, and breach of warranties. After a bench trial the trial court awarded Northstar damages in the amount of $40,310.81 plus attorney's fees in the amount of $40,000, and denied all of McLaughlin's counterclaims.

## STANDARD OF REVIEW

The trial judge entered findings of fact and conclusions of law. The trial court's findings of fact carry the same force and dignity as a jury's verdict. *M.D. Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991). Thus, we review the trial court's fact findings the same way we review the legal and factual sufficiency of the evidence supporting a jury's verdict. *Id.* In analyzing the legal sufficiency of the evidence supporting a

finding of fact under a "no evidence" point of error, we must examine the record for evidence and inferences that support the challenged finding, while disregarding all contrary evidence and inferences. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). "If there is more than a scintilla of evidence to support the findings, the 'no evidence' challenge cannot be sustained." *Id.* When analyzing the factual sufficiency of the evidence, we consider all of the evidence in the record both for and against the finding. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). We will find the evidence factually insufficient if we conclude the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.*

We review the trial court's conclusions of law de novo. *Benedictine Sisters of the Good Shepherd v. Ellison*, 956 S.W.2d 629, 631 (Tex.App.-San Antonio 1997, pet. denied). "A conclusion of law will be reversed if it is erroneous as a matter of law." *Id.* Erroneous conclusions of law need not prompt a reversal, however, "if the judgment can be sustained on any legal theory supported by the evidence." *Swate v. Medina Cmty. Hosp.*, 966 S.W.2d 693, 697 (Tex.App.-San Antonio 1998, pet. denied).

## NORTHSTAR'S BREACH OF CONTRACT CLAIM

McLaughlin contends Northstar failed to prove the elements for breach of contract for either Job No. 2 or Job No. 3. To prove breach of contract the following elements must be satisfied: "(1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." *Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 898 (Tex.App.-San Antonio 2002, no pet.).

The trial court specifically found that Northstar met all conditions precedent and fully performed its services and delivered goods on all three jobs pursuant to the terms of the contract. In addition, the trial court found that the contract did not provide that "time was of the essence" with respect to Northstar's performance on any of the three jobs, and that Northstar performed its obligations to McLaughlin within a reasonable time on all three jobs. Regarding damages, the court found that McLaughlin did not pay Northstar for the goods and services Northstar provided to McLaughlin on Jobs No. 2 and No. 3. Further, the charges for goods and services on both Jobs No. 2 and No. 3 were just since the prices charged were in accordance with the contract, and otherwise were the usual, customary and reasonable prices for the goods and services delivered. The court did find, however, that Northstar failed to give McLaughlin a $10,000 credit toward Job No. 2 as offered.

McLaughlin argues that Northstar failed to properly perform the guidance services under the contract, and thus cannot recover under a breach of contract claim. McLaughlin claims that Northstar caused such delays and problems in performing that McLaughlin incurred additional expenses. McLaughlin argues that Northstar erroneously charged McLaughlin for some items; therefore, the damages Northstar sought were not "just compensation" as required under a breach of contract claim. McLaughlin also argues that Job No. 3 was not covered by a contract so there cannot be a breach of contract claim for that job.

Our review of the record reveals legally and factually sufficient evidence to support the court's findings and judgment. The Operations Coordinator for Northstar testified that Northstar never gave McLaughlin a time frame for performance because it is not possible to predict how long a bore will take to complete. The Coordinator also explained that since McLaughlin did not conduct any soil borings, the project was even more unpredictable because they did not know what kind of ground conditions they would be encountering. Regarding Job No. 2, the Coordinator testified that McLaughlin was charged in accordance with the terms of the quotations given to the company. In addition, the Coordinator stated there was downtime associated with Job No. 2 due to unexpected drilling conditions not attributable to Northstar. This testimony was confirmed by Hugh O'Donnell, Northstar's expert witness, who stated that most of the delays in the job were directly related to the performance and experience of McLaughlin's crew.

In regards to Job No. 3, the Operations Coordinator testified that section 19.9 of the contract states that all subsequent jobs are subject to the terms of the contract unless there are changes that both parties agree on. McLaughlin complained about extra expenses it endured because the bore was pulled up short in Job No. 3. However, Northstar's Coordinator and O'Donnell both testified that it was McLaughlin's decision to stop the bore where it did. McLaughlin's owner likewise testified that it was his decision to stop the bore where he did. In addition, O'Donnell stated that the data Northstar gave McLaughlin from the TruTracker system was reliable. After examining the record, we conclude that the trial court's findings of fact are supported by factually and legally sufficient evidence.

The trial court concluded that: the contract between Northstar and McLaughlin is a valid and enforceable contract under Texas law; Northstar performed its services for McLaughlin in a

good and workmanlike manner; Northstar was not responsible for the alleged delays in completing the jobs; McLaughlin breached the contract by failing to pay Northstar for the goods and services delivered to McLaughlin on Jobs No. 2 and No. 3; and Northstar suffered damages in the amount of $50,310.81, which the trial court reduced to $40,310.81 with a $10,000 credit owed to McLaughlin. Based on the evidence in the record and the findings of fact, these conclusions are not erroneous as a matter of law. Therefore, the trial court did not err in awarding Northstar breach of contract damages.

## NORTHSTAR'S ALTERNATIVE THEORIES

Northstar argues that the trial court's award of $40,310.82 in damages was appropriate on Northstar's breach of contract claim. In the alternative, Northstar also argues the award of damages should be affirmed on the grounds of sworn account, quantum meruit, and promissory estoppel. However, because we hold that the findings of fact are supported by legally and factually sufficient evidence and that the conclusions of law are proper as to the breach of contract claim, it is unnecessary to address these alternative theories.

## ATTORNEY'S FEES

 McLaughlin argues that Northstar is not entitled to recover attorney's fees since Northstar is not entitled to prevail on its claims against McLaughlin. "To recover attorney's fees under Section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *Green Intern., Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex.1997); *see* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1997). Section 38.001 allows an individual to recover attorney's fees under a claim for a

written contract. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8). Since we affirm the trial court's judgment regarding Northstar's prevailing breach of contract claim and award of damages, Northstar is entitled to collect attorney's fees pursuant to section 38.001. *See Gereb v. Smith–Jaye*, 70 S.W.3d 272, 273 (Tex.App.-San Antonio 2002, no pet.).

## EXPERT WITNESS TESTIMONY

 McLaughlin contends Hugh O'Donnell, Northstar's expert witness, was not qualified to testify whether Northstar properly performed the guiding services. McLaughlin objected to O'Donnell's testimony on the basis that he was not qualified to testify about Northstar's performance. McLaughlin emphasized that O'Donnell had never actually used the Tru-Tracker system or operated a drill, but had only evaluated the data. Therefore, McLaughlin claims the trial court abused its discretion in allowing him to testify. "A witness is qualified to testify as an expert if he has the appropriate knowledge, skill, experience, training, or education." *Durst v. Hill Country Mem'l Hosp.*, 70 S.W.3d 233, 239 (Tex.App.-San Antonio 2001, no pet.); TEX.R. EVID. 702. The burden of establishing an expert's qualifications lies on the party offering the testimony. *United Blood Serv. v. Longoria*, 938 S.W.2d 29, 31 (Tex.1997). The decision to admit expert testimony is within the trial court's discretion and will be disturbed on appeal only if there has been an abuse of that discretion. *Durst*, 70 S.W.3d at 239. To determine if there has been an abuse of discretion, we look to see "whether the trial court acted without reference to any guiding rules or principles." *United Blood Serv.*, 938 S.W.2d at 31.

 O'Donnell testified that he received a bachelor of science and a master of science in civil engineering and that he

has been in the business of directional drilling since the 1970's. Although he has never operated a TruTracker system such as the one in the present case, since the 1980's he has consulted with others on the system, including reviewing and interpreting TruTracker data. He explained how the TruTracker works and how to analyze the data received. He stated that he has evaluated TruTracker data on directional bores between 80 and 100 times. The trial court found he was qualified to analyze Northstar's TruTracker data and determine whether it was produced in a correct manner and whether the work Northstar performed met industry standards. Based on O'Donnell's education and extensive experience, we cannot say that the trial court abused its discretion in admitting O'Donnell's testimony. Further, O'Donnell's statements merely confirmed what Northstar's Operations Coordinator had stated earlier, and "[w]hen erroneously admitted evidence is merely cumulative ... the error is harmless." *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 230 (Tex.1990).

## McLAUGHLIN'S COUNTERCLAIMS

### Breach of Contract

 McLaughlin argues that Northstar breached its contract by providing substandard guidance services, causing McLaughlin to incur excessive delays and expenses. As previously noted, the trial court issued findings of fact and conclusions of law finding that Northstar performed all obligations under the contract in a good and workmanlike manner. Further, the trial court found that Northstar was not responsible for the alleged delays and that McLaughlin breached the contract by failing to pay Northstar for the two remaining jobs. Since we have deter-

mined the record supports the trial court's findings of fact and conclusions of law, McLaughlin's breach of contract claim regarding Northstar's performance is without merit.[1]

### Texas Deceptive Trade Practices Act

 McLaughlin contends that Northstar committed a deceptive trade practice in its promotional literature by representing that its services are of a particular standard, quality, or grade when they are of another. *See* TEX. BUS. & COM.CODE ANN. § 17.46(b)(7) (Vernon 2002 & Supp.2004). In order for a consumer to maintain an action for this violation, the consumer must show that the misrepresentation was a producing cause of his or her damages and that the consumer relied on the misrepresentation to his or her detriment. TEX. BUS. & COM.CODE ANN. § 17.50(a)(1) (Vernon 2002); *see Henry Schein, Inc. v. Stromboe,* 102 S.W.3d 675, 693 (Tex.2002) (stating that reliance is an element of a DTPA laundry list violation). The record in this case establishes that McLaughlin did not rely on Northstar's promotional literature to hire Northstar, but rather on a friend's recommendation. Accordingly, the court's conclusion that McLaughlin cannot maintain a cause of action under the DTPA is not erroneous as a matter of law.

### Sufficient Time for McLaughlin to Present Its Case

 McLaughlin contends the trial court abused its discretion in allotting McLaughlin only twelve minutes to present its counterclaims. "A trial court has the discretion to make rulings that govern the conduct of a trial, and we will not reverse the rulings unless there has been a manifest abuse of discretion." *Bohls v.*

---

1. Because McLaughlin in not entitled to recover on its breach of contract claim, it is also not entitled to recover attorney's fees. *See Green,* 951 S.W.2d at 390.

*Oakes*, 75 S.W.3d 473, 476 (Tex.App.-San Antonio 2002, pet. denied). In addition, an appellant must properly object and make the trial court aware of the alleged abuse of discretion in order to preserve error. *See* Tex.R.App. P. 33.1(a).

During the trial, the judge asked the attorneys how much time they would need to finish presenting their evidence. McLaughlin's attorney stated he needed about an hour total to present his case, and Northstar's attorney stated he needed about an hour and a half. The judge allotted McLaughlin forty-five minutes and Northstar an hour. When Northstar rested, the trial judge granted McLaughlin an additional five minutes and reminded McLaughlin of its remaining time, which was seven minutes. When McLaughlin's time was finished, the judge gave McLaughlin another five minutes to finish his case. Thus, in total, the judge allotted McLaughlin fifty-five minutes of the sixty that McLaughlin originally requested to present its case.

Since McLaughlin gave the trial judge an approximate time, and the trial judge allotted McLaughlin time within five minutes of that amount, the trial court did not abuse its discretion. *See Walton v. Canon, Short & Gaston*, 23 S.W.3d 143, 154 (Tex. App.-El Paso 2000, no pet.).

### CONCLUSION

After reviewing the evidence, we hold that the trial court did not err in awarding Northstar breach of contract damages and attorney's fees, admitting the expert testimony of O'Donnell, or denying McLaughlin's breach of contract and DTPA counterclaims. We affirm the judgment of the trial court.