Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★ ★ ★ ★

**MEMORANDUM OPINION**

No. 04-08-00211-CV

**UNITED WATER SERVICES, L.L.C.**,
Appellant

v.

Carlos M. **ZAFFIRINI**, Sr.,
Appellee

From the County Court at Law No. 1, Webb County, Texas
Trial Court No. 2006-CVF-001712-C1
Honorable Fred Shannon,[1] Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:    Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed:    January 21, 2009

REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART

United Water Services, L.L.C. ("United") retained attorney Carlos Zaffirini to assist United

in procuring a water and wastewater service agreement with the City of Laredo, Texas. A fee dispute

developed between the parties, and Zaffirini sued United for money he claimed was owed under their

contract. United denied Zaffirini's claim and countersued Zaffirini for overpayments. Both parties

filed competing motions for summary judgment. The trial court granted summary judgment in favor

---

[1] ▲ Sitting by assignment.

of Zaffirini, awarding him all the damages he sought. United now appeals. For the reasons discussed below, we reverse the judgment of the trial court, and render in part, and remand in part.

### FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts in this lawsuit are essentially undisputed. During the year 2000, United learned that the City of Laredo ("City") intended to privatize the operation of its water and wastewater facilities. In order to increase its chances of being awarded the contract, United retained attorney Zaffirini for an initial one-year term to assist United in negotiations with the City. United and Zaffirini memorialized their agreement on January 1, 2002 in a document entitled "Retainer Agreement." The entire Retainer Agreement consists of four pages, two exhibits and one attachment. Exhibit A describes the legal services Zaffirini was hired to provide and Exhibit B details Zaffirini's compensation. Zaffirini was to earn a one-time $50,000 payment upon execution of the Retainer Agreement and an additional $50,000 payment if and when United and the City entered into a contract. Exhibit B further provides that in the event United is awarded the City contract, Zaffirini would receive a contingency fee. This fee was more fully described in Attachment 1 and states, in part, that if United is awarded the City contract, Zaffirini would receive monthly payments of $3,000 for the life of the City contract.

Subsequently, the City awarded the contract to United, and United and the City entered into a written contract on May 8, 2002 ("Service Agreement"). The initial contract term between United and the City was for five years—October 1, 2002 through September 30, 2007. A dispute between the parties eventually caused United and the City to execute a written document entitled "Mutual Dissolution Agreement." In that document, United and the City agreed to dissolve their contract

and to provide mutual releases of claims, effective May 5, 2005. As part of the dissolution agreement, United paid the City $3 million dollars without admission of breach or default.

Some months after United's contract with the City was dissolved, a fee dispute arose over whether Zaffirini was due monthly fees under his Retainer Agreement with United. Zaffirini sued United for breach of contract and fraud claiming United had failed to pay him 21 months of fees for a total of $63,000. United answered the lawsuit, denying the allegations in Zaffirini's petition and asserting several affirmative defenses. United further filed a counterclaim against Zaffirini seeking the return of $18,000 in overpayments "due to an accounting oversight" that caused United to continue paying Zaffirini monthly fees from May through December 2005, even though United's contract with the City ended in May 2005.

After initial discovery, both parties filed motions for summary judgment. The trial court held a hearing and, at the conclusion, granted Zaffirini's traditional motion for summary judgment, awarding Zaffirini $63,000 in damages, $21,000 in attorney's fees through summary judgment, and conditional attorney's fees in the event of an appeal. The trial court denied United's no-evidence and traditional motions for summary judgment and its counterclaim.

## STANDARD OF REVIEW

We review a trial court's order granting summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When both parties move for summary judgment, and the trial court grants one motion and denies the other, the appellate court considers the summary judgment evidence presented by both sides, determines all questions presented, and, if it determines the trial court erred, renders the judgment the trial court should have rendered. *Id.*; *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

**BREACH OF CONTRACT CLAIM**

We begin our analysis by first examining the competing traditional motions for summary judgment. Zaffirini filed his motion for summary judgment on the basis that United had breached its contract with him when it failed to pay him monthly fees for the time period of January 2006 through September 30, 2007. In support of his motion, Zaffirini first argued that his contract with United entitled him to receive monthly fees for the "life" of United's contract with the City, or from May 8, 2002 through September 30, 2007. Zaffirini further argued that in the event United terminated its contract with the City for convenience, he was still entitled to the total amount of monthly fees, reduced to present-day value.

United filed both a written response to Zaffirini's motion and its own affirmative motion for summary judgment, arguing that Zaffirini had failed to establish his breach of contract action because at the time of the alleged breach, when United stopped paying the monthly fees in January 2006, there was no enforceable contract between Zaffirini and United. Specifically, United maintained that Zaffirini's monthly fee was contingent upon the existence of United's contract with the City. Because that contract had ended on May 5, 2005, so did United's contractual obligation to pay a monthly fee to Zaffirini. United further argued that Zaffirini's motion for summary judgment also failed because United did not, and could not, terminate its contract with the City for convenience.

To succeed on a breach of contract claim, the plaintiff must prove: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *McLaughlin, Inc. v. Northstar Drilling Techs., Inc.*, 138 S.W.3d 24, 27 (Tex. App.—San Antonio 2004, no pet.). Here, the parties

do not dispute that United and Zaffirini entered into a written contract, *i.e.*, the Retainer Agreement. They also do not dispute that Zaffirini was timely paid the initial payments due him under the Retainer Agreement. Instead, their fee dispute centers around the monthly fee due Zaffirini, as described in Attachment 1 to the Retainer Agreement ("Attachment 1"). The entire provision consists of two sentences and reads as follows:

> Upon commencement of a service agreement for the operation of the wastewater system of the city of Laredo ("Service Agreement"), UWS agrees to extend this Retainer Agreement for the life of the Service Agreement upon the same terms and conditions but with Zaffirini to be paid three thousand dollars ($3,000.00) per month for services rendered as such services are described herein. If the Company terminates for convenience, this fee shall be payable for the life of the Agreement, but reduced to present day value.

In lawsuits involving written agreements, our primary concern is to determine the true intent of the parties to the contract. *See Perry Homes v. Cull,* 258 S.W.3d 580, 606 (Tex. 2008). To ascertain that intent, we look first to the language used in the instrument. *Id.* Contract language that can be given a definite or certain meaning is considered unambiguous and should be construed by the court as a matter of law. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). An unambiguous contract will be enforced as written, and generally the writing alone will be deemed to express the parties' intentions. *Luckel v. White*, 819 S.W.2d 459, 461-62 (Tex. 1991) ( intent is determined from the express language found within the "four corners" of the document). Parol evidence is not admissible to render a contract ambiguous which, on its face, is capable of being given a definite legal meaning. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex. 1995). Furthermore, when the facts surrounding performance of an unambiguous contract are undisputed, the determination of whether a party has breached the contract is also a question of law for the court and not a question of fact for the jury. *Meek v. Bishop*

*Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (the existence of the contract wherein the appellee agreed to pay the appellant fees for legal representation was undisputed, as was the appellee's failure to pay the fees); *Bank One, Tex., N.A. v. Stewart*, 967 S.W.2d 419, 432 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (noting that dispute regarding terms of an agreement and whether undisputed actions constituted a breach were questions of law). If, however, the language used in the contract is capable of more than one reasonable interpretation, an ambiguity exists and the parties' intent should be submitted to the jury as a fact question. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex. 1996). An ambiguity does not exist simply because the parties differ in their interpretations of the contract language. *In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 781 (Tex. 2006).

As noted earlier, the controlling contractual provision at issue in this lawsuit consists of two sentences. Both parties maintain that the language used in the provision is unambiguous but proffer conflicting interpretations. We will examine each sentence in turn.

### Sentence One – Life of the Service Agreement

Zaffirini moved for summary judgment on the basis that United breached its contract with him when United stopped paying him monthly fees. In support of his motion, Zaffirini first argued he was entitled to receive the monthly fees for the "life" of the Service Agreement. The contractual provision at issue reads in relevant part as follows:

> United "agrees to extend this Retainer Agreement for **the life of the Service Agreement** . . . with Zaffirini to be paid three thousand dollars ($3,000.00) per month for services rendered . . . ."

(emphasis added). In briefing before the trial court and this court, each party asserts an alternate meaning for the word "life" as used within the above-quoted sentence.

Zaffirini contends the "life" of the Service Agreement began when United and the City signed the agreement on May 8, 2002, and continued until the conclusion of the initial five-year contract term on September 30, 2007. In support of his interpretation, Zaffirini points to the Service Agreement which states that the "term" of the agreement is five years—October 1, 2002 through September 30, 2007. However, because the agreement was signed five months earlier, Zaffirini maintains the Service Agreement had a "life" of five years and five months.

United counters that "life" refers to the actual existence of a contractual relationship between United and the City, and is distinct from the "term" of the Service Agreement as argued by Zaffirini. Accordingly, when United and the City mutually dissolved their contract, the "life" of the Service Agreement ended and so did United's obligation to pay a monthly fee to Zaffirini.

Terms used in contracts are given their plain, ordinary, and generally accepted meaning unless the agreement shows the words are used in a technical or different sense. *Western Reserve Life Ins. Co. v. Meadows*, 152 Tex. 559, 261 S.W.2d 554, 557 (Tex. 1953). Here, it is apparent that United and Zaffirini intended to use the word "life" in its ordinary sense. The word "life" generally means "the period from birth to death" or "the period of existence." *See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 689 (1990). By specifically referencing the "life" of the Service Agreement instead of the "term" of the Service Agreement, the parties intended that the contractual obligation to pay Zaffirini a monthly fee would continue as long as the Service Agreement was alive or "in existence."

### Sentence Two – Discount to Present-Day Value Provision

As an alternative argument in support of his motion for summary judgment, Zaffirini maintained that because United terminated its contract with the City for convenience, Zaffirini was

entitled to the total amount of monthly fees, reduced to present-day value under the second sentence of the contractual provision found in Attachment 1 to the Retainer Agreement. It reads:

> **If the Company terminates for convenience**, this fee shall be payable for the life of the Agreement, but reduced to present day value. (emphasis added).

We begin by noting that both parties offer conflicting interpretations of what triggers this particular contractual provision. Under Zaffirini's interpretation, he argues it would apply to the facts of the case as follows: If United terminates its contract with the City (Service Agreement) for convenience, Zaffirini would be entitled to his fees reduced to present-day value. United counters the above quoted contractual provision was intended to apply only in the event United terminated its contract (Retainer Agreement) with Zaffirini for convenience, but simply did not apply, as Zaffirini argued, if United terminated its contract (Service Agreement) with the City. In support of its interpretation, United directs us to other provisions contained within the body of the Retainer Agreement between United and Zaffirini. Specifically, those provisions allow United to terminate Zaffirini's professional services for cause or without cause and further provide that, in the event Zaffirini is terminated without cause, he would receive compensation as set forth in exhibit B and attachment 1—the very provision at issue here. Accordingly, United argues the proper interpretation of this provision would be that it is triggered only if United terminates Zaffirini without cause during the life or existence of United contract with the City. Here, it is undisputed that United never sought to terminate Zaffirini's retainer agreement for any reason—with cause or without cause.

United further argues, irregardless of what triggers the above contractual provision, Zaffirini's alternative argument in support of summary judgment also fails because United did not have the contractual right to terminate its contract with the City for convenience as alleged by Zaffirini. Based

on the language in the contract between United and the City, only the City could terminate the Service Agreement for convenience, not United. We agree. The summary judgment evidence established that United did not have the contractual authority to terminate its contract with the City for convenience. That contractual right belonged solely to the City.[2] Furthermore, based on the summary judgment evidence, the Service Agreement was mutually dissolved as a way of avoiding litigation and as a compromise and release between the City and United.

### *Summary Judgment Evidence*

Having reviewed the language used in the Retainer Agreement between United and Zaffirini, we hold as a matter of law, that despite the parties' disagreement over its interpretation, the contract is unambiguous. *In re D. Wilson Constr. Co.,* 196 S.W.3d at 781; *Nat'l Union Fire Ins. Co.*, 907 S.W.2d at 520. By specifically referencing "life" in Attachment 1, the parties expressed their intent to pay Zaffirini a monthly fee of $3,000 for as long as the Service Agreement was alive or in existence. In other words, United would "extend" Zaffirini's Retainer Agreement beyond its initial one-year term and pay a monthly $3,000 fee for as long as the Service Agreement between United and the City existed—beginning May 8, 2002 when the Service Agreement was signed and possibly even

---

[2] Section 15.5 of the Service Agreement, entitled "City Convenience Termination During the Management Period," states as follows:

> Termination Right and Fee. The City shall have the right at any time after following the Commencement Date, exercisable **in its sole discretion**, for its convenience and without cause, to terminate this Service Contract upon 60 days' written notice to the company. If the City exercises its right to terminate the Service Contract pursuant to this Section, the City shall pay the Company a convenience termination fee equal to the sum of $158,333.33 for each of the first 12 months that has elapsed from the Commencement Date. . . . (emphasis added).

It is undisputed that the City did not invoke the above contractual provision, nor did the City pay United a convenience termination fee.

extending beyond the initial five-year term of the City contract.[3]  However, the contractual obligation to Zaffirini would cease when the Service Agreement between United and the City no longer existed. This interpretation harmonizes and gives effect to all the provisions of the contract, and is consistent with the parties' expressed intent to extend Zaffirini's Retainer Agreement within certain limitations.

Here, the summary judgment evidence establishes that the contractual relationship between United and the City was dissolved by mutual agreement of the parties effective May 5, 2005.  Once the life of the Service Agreement ended, so did United's contractual obligation to pay Zaffirini a monthly fee. *See Marshall v. Marshall,* 735 S.W.2d 587, 592 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (when a contract is limited to duration by the happening of an event or contingency, the event or contingency determines the duration).  Therefore, at the time of the alleged breach by United, in January 2006, no enforceable contract existed between United and Zaffirini and summary judgment in favor of Zaffirini on his breach of contract action was improper. *Wright v. Christian & Smith,* 950 S.W.2d 411, 413 (Tex. App.—Houston [1st Dist.] 1997, no writ) ("[t]he threshold inquiry in a breach of contract action is whether an enforceable agreement exists between the parties").  Accordingly, we reverse that portion of the trial court's judgment awarding Zaffirini damages, attorney's fees and costs on his breach of contract claim, and render a take-nothing judgment as to that claim.  Furthermore, in the interest of justice, we remand United's claim for attorney's fees arising from the breach of contract claim for further consideration by the trial court.

### UNITED'S NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT ON ZAFFIRINI'S FRAUD CLAIM

In addition to his cause of action for breach of contract, Zaffirini pled a second cause of action, for fraud, alleging that United knowingly made promises and material misrepresentations that

---

[3] The initial term of the Service Agreement between United and the City was for five years; however, the City did have the option of renewing the Service Agreement for one additional term of five full contract years.

Zaffirini would receive a monthly fee for the life of the Service Agreement with the City. To defeat this claim, United filed a no-evidence motion for summary judgment on the basis that Zaffirini could produce no evidence that his fraud cause of action arises out of a duty independent of the contractual relationship. *See Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex. 1991) (where plaintiff seeks damages for breach of duty created under contract, rather than a duty imposed by law, the claim sounds only in contract). The trial court denied United's no-evidence motion for summary judgment, but failed to otherwise dispose of Zaffirini's fraud claim. A summary judgment which does not dispose of all claims is generally interlocutory, and therefore not a final appealable judgment. *See McNally v. Guevara,* 52 S.W.3d 195, 196 (Tex. 2001). However, in this instance, the trial court clearly intended for its order to be final and appealable. The court granted Zaffirini's motion for summary judgment on his contract claim, awarded Zaffirini all the damages he sought including attorney's fees and court costs, and further included a statement that "this judgment is final and disposes of all claims and all parties and is appealable." *See Lehmann v. Har-Con Corp.,* 39 S.W.3d 191, 200, 204 (Tex. 2001). Because the trial court's order purports, although erroneously, to dispose of all issues and every party, the order is final and appealable. *Id.* Since the order erroneously states that it is final, we reverse the portion of the trial court's order purporting to render final judgment as to Zaffirini's fraud claim and remand the cause to the trial court for further proceedings as to the unresolved fraud claim.

**UNITED'S TRADITIONAL SUMMARY JUDGMENT MOTION–RESTITUTION FOR UNJUST ENRICHMENT**

United also sought summary judgment based on its counterclaim for restitution for unjust enrichment. In support of its unjust enrichment claim, United sought return of excess fees mistakenly

paid by United to Zaffirini after May 2005 totaling $18,000.[4] The trial court denied United's motion for summary judgment, and further ordered that United take nothing on its counterclaim.

At the time of the summary judgment hearing, only United had a pending motion for summary judgment on United's claim of unjust enrichment. Clearly, the trial court had the authority to either grant or deny United's summary judgment motion on that ground. TEX. R. CIV P. 166a. The trial court, however, not only denied United's motion but also rendered a take-nothing judgment against United. The denial of a summary judgment motion does not finally decide any question before the court. *Anderson v. Bormann,* 489 S.W.2d 945, 946 (Tex. Civ. App.—San Antonio 1973, writ ref'd n.r.e.). Additionally, without a pending motion seeking such relief from Zaffirini, the trial court lacks a legal basis for rendering a take-nothing judgment against United. *Young v. Hodde,* 682 S.W.2d 236, 237 (Tex. 1984) (holding trial court errs in rendering take-nothing judgment against counter-claim in absence of motion for summary judgment by plaintiff seeking that relief); *City of Houston v. S. Pac. Transp. Co.,* 605 S.W.2d 717, 718 (Tex. Civ. App.—Houston [1st Dist.] 1980, no writ). Accordingly, we reverse the portion of trial court's judgment rendering a take-nothing judgment as to United's unjust enrichment claim and remand the cause to the trial court for further consideration of that claim.

## CONCLUSION

Based on the foregoing reasons, we resolve the appeal as follows:

1. We reverse the trial court's summary judgment in favor of Zaffirini and instead render judgment in favor of United that Zaffirini take nothing on his breach of contract claim; we

---

[4] The party seeking restitution based on unjust enrichment must establish both that there was unjust enrichment and that the person sought to be charged either "wrongfully secured a benefit or had passively received one which it would be unconscionable for him to retain." *Villarreal v. Grant Geophysical, Inc.* 136 S.W.3d 265, 270 (Tex. App.— San Antonio 2004, pet. denied); *Barrett v. Ferrell,* 550 S.W.2d 138, 143 (Tex. Civ. App.—Tyler 1977, writ ref'd n.r.e.) (citing 66 AM. JUR. 2D *Restitution and Implied Contracts* § 4, p. 947 (1973)).

further reverse the award of attorney's fees to Zaffirini and remand United's claim for attorney's fees to the trial court for consideration;

2.  Because the trial court erroneously rendered a final appealable judgment without addressing Zaffirini's fraud claim, we remand Zaffirini's fraud claim to the trial court for consideration; and

3.  We reverse the trial court's judgment that purports to render a take-nothing judgment on United's counterclaim for restitution for unjust enrichment, and remand United's counterclaim to the trial court for further proceedings.

Phylis J. Speedlin, Justice