

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00079-CV

The **BLANCO NATIONAL BANK**, Its Successors, Assigns, and Predecessors In Interest,
Appellant

v.

Michael R. **GONZALEZ**,
Appellee

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-09327
Honorable Antonia Arteaga, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
               Marialyn Barnard, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed:  April 24, 2013

REVERSED AND RENDERED

        In six points of error, Blanco National Bank (the Bank) appeals the trial court's judgment

in favor of Michael Gonzalez.  In its second point of error, the Bank alleges the evidence was

legally insufficient to support a finding of breach of contract by the Bank.  We agree.  Because

this issue is dispositive, we do not reach the Bank's remaining claims.

**BACKGROUND**

In 2005, the Bank loaned Gonzalez[1] $45,000 to purchase a river-front lot on the Guadalupe River (the River Lot Loan). In 2007, the Bank loaned Gonzalez $343,360.00 to purchase two lots off of Highway 281 and a home on Guenther Street near downtown San Antonio (the Guenther Loan or Guenther Properties). Both of these loan agreements included execution of a Lien Note and a Deed of Trust, which gave the Bank a purchase money first lien. Additionally, both of these loan agreements were modified and extended in 2010, causing the loans to mature in 2013. The loan agreements required Gonzalez to, among other things, timely make monthly payments, timely pay all taxes on the properties, and preserve the Bank's priority-lienholder status. According to the agreements' terms, failure to timely make payments or perform any obligation would result in acceleration of the loan, causing the entire balance of the principal and interest to be immediately due.

In November of 2010, the Bank sent Gonzalez Notices of Default on both loans. These notices stated that both notes had several overdue monthly payments as well as overdue tax payments for 2008, 2009, and 2010. The Bank warned Gonzalez that all defaults must be cured by December 6, 2010. Gonzalez made some payments and became current on his payments for the River Lot Loan by December 6, 2010. The parties dispute whether Gonzalez was current on his Guenther Loan payments by December 6, 2010. At trial, it was undisputed that Gonzalez had overdue tax payments on the Guenther Properties and the River Lot. Gonzalez did, however, present some evidence that he had payment plans with the taxing authorities, and he argued this showed compliance with his obligation to pay taxes on the properties.

---

[1] Gonzalez and his wife both signed all loan documents. Additionally, correspondence from the Bank was usually addressed to both Gonzalez and his wife. However, Gonzalez was the only plaintiff named in this case, so we will refer to Gonzalez as the only plaintiff.

On January 7, 2011, the Bank sent Gonzalez Notices of Acceleration on both loans and Notices of Foreclosure on all properties. As a result, both loans were fully accelerated and due in full. Gonzalez ceased payments on the loans after January. The Bank attempted to foreclose on the properties numerous times, but each time Gonzalez was granted a temporary restraining order to prevent the foreclosures.

Although not entirely clear from the record, it appears that sometime around January of 2011 the Bank may have reinstated the loan for an additional 120 days, giving Gonzalez until June 1, 2011 to provide payment of the loans. In an apparent attempt to cure the defaults, in February of 2011, Gonzalez obtained a loan from Propel Tax Loans in order to pay off his delinquent taxes in Bexar and Comal counties. As a result, however, Propel acquired a lien on the properties that, the Bank alleges, caused the Bank to lose its priority-lienholder status. In May of 2011, Gonzalez also sold the River Lot, intending that a portion of the sale proceeds go to the Bank for the amount due on the River Lot Loan (around $36,000) and that the remainder of the proceeds (around $63,000) be paid to him. Gonzalez planned to use the proceeds to completely pay off his tax loan from Propel and to pay any missed payments on the loans. Instead, the Bank used the $63,000 above what was due on the River Lot Loan to pay principal, interest, and attorney's fees due on the Guenther Loan.[2]

Gonzalez filed his Original Petition in June of 2011 and his Amended Petition in August of 2011. The trial was held on November 2, 2011. The jury returned a verdict in Gonzalez's favor, finding that the Bank breached the loan agreement with Gonzalez and awarding Gonzalez $100,000 in damages plus attorney's fees. The Bank filed a Motion for Judgment

---

[2] The Bank put the $63,000 toward the Guenther Loan in accordance with the cross-collateralization provision contained in the River Lot loan agreement. A cross-collateralization clause is defined as "[a]n installment-contract provision allowing the seller, if the buyer defaults, to repossess not only the particular item sold but also every other item bought from the seller on which a balance remained due when the last purchase was made." BLACK'S LAW DICTIONARY 404 (8th ed.2004).

Notwithstanding the Verdict, and it was denied by the trial court. Subsequently, the Bank filed its Notice of Appeal. On appeal, Blanco Bank raises six points of error, including a claim that breach of contract was not pleaded and, thus, improperly submitted to the jury, as well as its claim that the evidence was legally insufficient to support breach of contract. Assuming, without deciding, that the breach of contract cause of action was properly submitted to the jury, we conclude that the evidence is insufficient to support the judgment.

## SUFFICIENCY OF THE EVIDENCE

### A. *Standard of Review*

We review the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable fact finder could and disregarding contrary evidence unless a reasonable fact finder could not. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. National Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009); *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). The fact finder is the sole judge of the credibility of and the weight to be given to the witnesses' testimony. *City of Keller*, 168 S.W.3d at 819. A legal sufficiency challenge to the evidence will be sustained if the record reveals: (a) an absence of evidence of an essential fact; (b) that rules of law or of evidence prohibit the court from crediting the only evidence supporting a vital fact; (c) there is no more than a mere scintilla of evidence to prove a crucial fact; or (d) the evidence conclusively establishes the opposite of a critical fact. *Id.* at 810; *see also Regal Fin. Co. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 603 (Tex. 2010). "Evidence does not exceed a scintilla if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." *Akin, Gump*, 299 S.W.3d at 115 (quoting *Kroger Tex., Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006)) (internal quotation marks omitted).

## B. *Breach of Contract Elements and the Parties' Arguments*

To succeed on a breach-of-contract claim, the plaintiff must prove: (1) the existence of a valid contract between the plaintiff and the defendant; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff suffered damages as a result of the breach. *Killeen v. Lighthouse Elec. Contractors, L.P.*, 248 S.W.3d 343, 349 (Tex. App—San Antonio 2007, pet. denied); *Southwell v. University of Incarnate Word*, 974 S.W.2d 351, 354–55 (Tex. App.—San Antonio 1998, pet. denied). A plaintiff cannot prevail on a breach-of-contract claim when the plaintiff fails to perform its material obligations under the contract. *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam); *Nevins v. Thomas*, 16 S.W. 332, 334 (Tex. 1891). In fact, "[d]efault by one party excuses performance by the other party." *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 689 (Tex. 1981).

Although the Bank does not specifically refer to "a failure to tender performance" by Gonzalez, that is effectively what the Bank argued at trial and what it argues again on appeal as the reason why its actions did not constitute a breach of the loan agreements. Indeed, the Bank essentially claims it did not breach the contract because it sought foreclosure in accordance with the agreements and only after Gonzalez failed to make payments on the loans and pay taxes for the properties.

In response to the Bank's assertions, Gonzalez's argument focuses on the possible misapplication of payments that resulted in allegations of missed payments. Specifically, Gonzalez contends the Bank records erroneously showed missed payments for the month prior to when each loan modification was signed. Gonzalez argues that he could not have defaulted on a payment when the modification/contract had not yet been executed. Even if Gonzalez's claim

that he missed no payments is true, he must still rebut the argument that he did not timely pay property taxes. Thus, we need not address whether Gonzalez made all payments.

### C. *Property Taxes*

Section 32.05 of the Texas Tax Code plainly states that "a tax lien provided by this chapter takes priority over . . . the claim of any creditor of a person whose property is encumbered by the lien." TEX. TAX CODE ANN. § 32.05(b) (West 2008). Chapter 32 of the Tax Code provides:

> On January 1 of each year, a tax lien attaches to property to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on the property, whether or not the taxes are imposed in the year the lien attaches. The lien exists in favor of each taxing unit having power to tax the property.

*Id.* § 32.01(a) (West 2008).

The evidence at trial showed that Gonzalez was behind on the property taxes for 2008, 2009, and 2010 on both properties and that these overdue taxes had not been paid by December 6, 2010, thus displacing the Bank of its priority-lienholder position. Additionally, Gonzalez admitted that he was delinquent on his tax payments and that he was aware that failure to timely pay taxes resulted in the taxing authorities obtaining a lien superior to the Bank's lien. Indeed, documents created by Gonzalez concerning each loan indicate his acknowledgement of his failure to pay the taxes owed. The Bank also presented documents from the taxing authorities showing the amount of overdue taxes. Thus, there can be no question that, regardless of whether or not the taxing authorities had exercised their rights, the taxing authorities had a priority lien over the Bank after Gonzalez failed to timely pay his property taxes.

Nevertheless, Gonzalez alleges three reasons why the evidence is legally sufficient to support the Bank's breach of the contract despite his failure to timely pay property taxes and preserve the Bank's lien priority as agreed to in the Deeds of Trust.

1.  Use of Excess Proceeds

Gonzalez contends the Bank should have paid off his entire tax debt with the sale proceeds from the River Lot. The record reveals that the portion of the Propel tax lien covering the taxes for the River Lot was paid off using funds from the sale. Gonzalez, however, claims the sale proceeds should have been used to also pay the remainder of the Propel lien, which covered the property taxes for the Guenther Properties. Gonzalez presents no evidence that the Bank was obligated to use proceeds from the River Lot sale to pay the overdue taxes on the Guenther Properties. Conversely, the Deeds of Trust for both loans have cross-collateralization provisions that allow the Bank to incorporate any other debt owed by Gonzalez into the debt secured by that particular Deed of Trust. Further, the River Lot was not sold until May 13, 2011, after the loans had been accelerated and after Gonzalez was liable to the Bank for the full amount of the principal plus interest on both notes.

2.  Prior Breach

Gonzalez argues that his failure to pay property taxes was a prior breach, which was an affirmative defense that had to be pleaded by the Bank. We disagree. Contrary to Gonzalez's assertions, the Bank did not have to plead prior breach as an affirmative defense in order to prevail. Rule 94 of the Texas Rules of Civil Procedure, which requires a party to plead any affirmative defenses, applies to "matters constituting an avoidance or affirmative defense." An affirmative defense provides an excuse for the defendant's conduct despite a plaintiff's prima facie showing of its cause of action. *See Genesis Tax Loan Servs., Inc. v. Kothmann*, 339 S.W.3d 104, 108 (Tex. 2011) ("Pleading an affirmative defense is required to raise a matter of avoidance, 'an independent reason why the plaintiff should not recover'" (quoting *Gorman v. Life Ins. Co. of N. Am.,* 811 S.W.2d 542, 546 (Tex.1991)); *Highway Contractors, Inc. v. West Tex. Equip. Co.*, 617 S.W.2d 791, 794 (Tex. Civ. App.—Amarillo 1981, no writ) ("An

affirmative defense is a denial of the plaintiff's right to judgment even if the plaintiff establishes every allegation in its pleadings.").

In this case, tender of performance is an element Gonzalez was required to prove. *McLaughlin, Inc. v. Northstar Drilling Techs., Inc.*, 138 S.W.3d 24, 27–28 (Tex. App.—San Antonio 2004, no pet.). Where, as here, a defendant attempts to show the plaintiff's failure to tender performance of its obligations under the contract, the defendant is merely attacking the plaintiff's proof. *See id.* (demonstrating that tender of performance is an element of the plaintiff's case that must be proved and that it is susceptible to attack by a defendant); *cf. Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009) (explaining that a new and independent cause is a component of the proximate cause issue, not an affirmative defense). This is also in accordance with the principle that a defendant's general denial, like the Bank's, places each essential element of the plaintiff's cause of action in dispute. *Shell Chem. Co v. Lamb*, 493 S.W.2d 742, 744 (Tex. 1973).

3. Payment Plan for Taxes

Gonzalez had set up a payment plan with the taxing authorities, and he urged that this showed compliance with the taxing authorities. This payment plan, however, does not negate the fact that Gonzalez had not paid his taxes when due and that his failure to pay caused the Bank to lose its priority-lienholder status, both of which are contrary to the Loan Agreements.

### D. Gonzalez's Other Sufficiency Arguments

Gonzalez also alleges the Bank breached the contracts by sending inaccurate notices of acceleration and foreclosure. The notices of default from the Bank specified that the defaults were due to the failure to make timely payments and the failure to pay the taxes when due. Gonzalez appears to argue that the collection demands were improper because they were allegedly based on incorrect default-payment amounts due to an allegedly incorrect payment

- 8 -

schedule. As explained above, however, even if the allegedly overdue payments were not truly in arrears, the taxes were still overdue so the Bank had a contractual right to accelerate the note and foreclose on the property.

Gonzalez also appears to briefly argue that the Bank breached the contracts because it tried to foreclose on the River Lot after the River Lot had been sold to new buyers and after the Bank had collected all that was due on the note from the original sale. The record does indicate that the Bank attempted a foreclosure of the River Lot in June, subsequent to its sale in May; however, this foreclosure was prevented by a temporary restraining order. In any event, even if the Bank did attempt to foreclose on the River Lot in error after it was sold to a third party, Gonzalez would not have standing to protest the foreclosure. *See DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008) (stating that a "plaintiff must be personally aggrieved" in order to have standing).

## CONCLUSION

For the foregoing reasons, we conclude that the evidence is insufficient to support Gonzalez's breach-of-contract claim against the Bank. Accordingly, we reverse the judgment of the trial court and render judgment that Gonzalez take nothing from the Bank.[3]

Catherine Stone, Chief Justice

---

[3] Gonzalez asserts that the Bank raised the claim of insufficiency of the evidence for the first time in a motion for new trial so the appropriate remedy is to remand the case to the trial court for a new trial. *See Horrocks v. Texas Dep't of Transp.*, 852 S.W.2d 498, 499 (Tex. 1993) (per curiam). We disagree. The Bank's motion was titled "Motion for Judgment Notwithstanding the Verdict and/or a Motion for New Trial." Because the motion requested judgment notwithstanding the verdict and because we are to grant the relief the trial court should have granted, rendition is an appropriate form of relief. *See id.* at 498; *see also* TEX. R. APP. P. 43.3.